MARY VAN JACOBS, Adm'r of the Estate of Dennis R. Van Jacobs, Deceased, Plaintiff, *v.* JITENDRA PARIKH *et al.*, Defendants—(ROPER CORPORATION, Counter-Appellant, *v.* JITENDRA PARIKH, Counterdefendant-Appellee.)

First District (3rd Division)  No. 80-1648

Opinion filed June 10, 1981.

Arnstein, Gluck, Weitzenfeld & Minow, of Chicago (Arthur L. Klein, Peter D. Kasdin, Philip J. Nathanson, and Edward H. Salomon, of counsel), for appellant.

Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago (Victor J. Piekarski, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Third-party plaintiff, Roper Corporation, appeals from the trial court's order dismissing its third-party complaint against Jitendra Parikh. Parikh, Roper and others not relevant here, had been joined as defendants in a wrongful death action brought by Mary Van Jacobs whose husband died as a result of a collision between an automobile operated by Parikh and a motorcycle driven by deceased. At the time of the collision, deceased was wearing a helmet manufactured by Roper Helmets, a division of Roper. Van Jacobs settled with Parikh for $10,000, the limits of his insurance policy, and a covenant not to sue was executed. Roper thereafter filed a third-party complaint against Parikh in three counts seeking indemnity, equitable apportionment, and contribution. Parikh moved to dismiss the complaint on the basis of section 2(c), (d), of the contribution act (Ill. Rev. Stat. 1979, ch. 70, par. 302(d)), which provides in pertinent part:

> "(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

(d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor."

The trial court agreed that under the act Parikh's settlement immunized him from any liability to Roper.

■■ We first address the count in the third-party complaint which seeks contribution. The act applies to any tortfeasors who are "subject to liability" for the same injury or wrongful death. (Ill. Rev. Stat. 1979, ch. 70, par. 302(a).) Section 2(d) of the act by its terms discharges settling parties of liability for contribution. It is modeled after the Uniform Contribution Among Tortfeasors Act of 1955 (see 12 Uniform Laws Annotated §4(b), at 98 (1965)), and clearly evinces legislative intent to encourage settlements in tort litigation. (Appel and Michael, *Contribution Among Joint Tortfeasors in Illinois: An Opportunity for Legislative and Judicial Cooperation,* 10 Loy. Chi. L.J. 169 (1979).) Where a statute is clear and unambiguous we must enforce it according to its terms. (*Nordine v. Illinois Power Co.* (1965), 32 Ill. 2d 421, 206 N.E.2d 709.) There is no issue presented here regarding the "good faith" element of Parikh's settlement. Accordingly, the Act specifically bars Roper's claim for contribution.

As to Roper's claim for indemnity, Parikh successfully maintained in the trial court that the contribution act extinguishes indemnity as a basis for recovery in Illinois. We do not believe that the concept of indemnity has been nullified by the act. We believe, however, that the trial court properly found that the present third-party complaint failed to state a cause of action for indemnity. To understand the issue, a brief discussion of the concept of indemnity is necessary.

Indemnity derives from principles of contract, and may be express or implied. Application of the doctrine shifts the responsibility from the indemnitee and onto the truly culpable person who in fact caused the loss. (Prosser, Law of Torts 310 (4th ed. 1971).) Implied indemnity classically requires some pre-tort relationship between the parties which gives rise to a duty to indemnify. See, *e.g., Mierzejwski v. Stronczek* (1968), 100 Ill. App. 2d 68, 241 N.E.2d 573 (lessor and lessee); *Embree v. DeKalb Forge Co.* (1964), 49 Ill. App. 2d 85, 199 N.E.2d 250 (employer and employee); *Blaszak v. Union Tank Car Co.* (1962), 37 Ill. App. 2d 12, 184 N.E.2d 808 (owner and his lessee); *Gulf, Mobile & Ohio R.R. Co. v. Arthur Dixon Transfer Co.* (1951), 343 Ill. App. 148, 98 N.E.2d 783 (master and servant).)

Contribution, on the other hand, does not shift entire responsibility to a truly culpable party but, instead, apportions liability according to the relative fault of the parties. Unlike the usual indemnity case, where the indemnitee is liable to the plaintiff for the indemnitor's conduct, each contribution defendant's liability to plaintiff springs from his own conduct and exists apart from the liability of the contributing defendant.

*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437.

The distinctions between indemnity and contribution blurred, however, when in an effort to lessen the harshness of the no-contribution rule, some courts expanded indemnity beyond its traditional precepts. (*Skinner v. Reed-Prentice Division Package Machinery Co.*; *Gulf, Mobile & Ohio R.R. Co. v. Arthur Dixon Transfer Co.*; see also *Carver v. Grossman* (1973), 55 Ill. 2d 507, 305 N.E.2d 161.) This effort to compensate for the no-contribution rule is most apparent in the line of active-passive negligence indemnity cases evolving from the holding in *Reynolds v. Illinois Bell Telephone Co.* (1964), 51 Ill. App. 2d 334, 201 N.E.2d 322, where indemnity was permitted between stranger joint tortfeasors despite the absence of pre-tort relationship. (See also *Sargent v. Interstate Bakeries, Inc.* (1967), 86 Ill. App. 2d 187, 229 N.E.2d 769.) In 1968, however, our supreme court reaffirmed the traditional requirement of the pre-tort relationship. *Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 226, 234 N.E.2d 790.

In 1978, when the *Skinner* court ushered in contribution, it filled the void in the allocation of responsibility for tortious conduct which the *Reynolds* concept of active-passive negligence indemnity had attempted to fill. Accordingly, there is "no further need for this 'creative extension' of indemnity." Appel and Michael, at 192.

■■ The contribution act has not extinguished indemnity in Illinois but instead, permits the courts to place indemnity back upon its theoretical foundation. We therefore follow *Muhlbauer* and its progeny and hold that in addition to a qualitative distinction between the conduct of the parties, a cause of action for indemnity requires a duty to indemnify, arising not from the relative fault of the parties, but from the pre-tort relationship between the parties.

■■ We turn now to consider whether Roper states a cause of action for indemnity. Roper fails to allege any pre-tort relationship between it and Parikh which would give rise to a duty to indemnify. Moreover, the allegation that Parikh solely and proximately caused decedent's injuries does not support a claim for indemnity since, in the absence of some pre-tort relationship, proof of this allegation would exonerate Roper completely from liability to the deceased's estate, and there would be no need for indemnity. See *Burke v. Sky Climber, Inc.* (1974), 57 Ill. 2d 542, 316 N.E.2d 516.

The conclusory allegations that Parikh somehow "misused" the deceased's helmet, or that Parikh "assumed the risk" of the helmet worn by the deceased do not state a cause of action. We fail to see how one not a user of the product can be deemed to misuse or assume the risks of the product. *Cf. Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 338 N.E.2d 857; *Burke v. Sky Climber*.

We also believe that the trial court properly dismissed the count of

the third-party complaint seeking equitable apportionment. The doctrine of equitable apportionment focuses upon the severability of the injury and is typically invoked in situations where a second tortfeasor inflicts an injury successive to the one caused by the first tortfeasor. In such a case, the original tortfeasor is held liable for all damages flowing from the original acts, despite the absence of control over the second tortfeasor's conduct. Application of the doctrine of equitable apportionment permits the original tortfeasor to recoup that portion of damages attributable to the conduct of the second tortfeasor. See, *e.g., Gertz v. Campbell* (1973), 55 Ill. 2d 84, 302 N.E.2d 40; Prosser, Law of Torts 320-21 (4th ed. 1971).

■■ Under the new contribution act, however, the *Gertz*-type plaintiff may sue for contribution for damages attributable to the successive injury caused by the second tortfeasor. Unlike the common law contribution requirement that the tortfeasor be jointly and severally liable, the Act requires only that the tortfeasors be "subject to liability" for the same injury. Hence, the original tortfeasor who technically did not "cause" the successive injury may obtain contribution from the second tortfeasor for the latter injury because both are subject to liability for that injury. Accordingly, although Roper's third-party complaint is couched in terms of equitable apportionment, it alleges a claim for contribution. (See, *e.g., Skinner v. Reed-Prentice Division Package Machinery Co.* (claim was labelled indemnity, but actually alleged contribution).) Section 2(d) of the contribution act therefore bars Roper's count for equitable apportionment. Moreover, Roper's complaint fails to state a cause of action under traditional equitable apportionment analysis because the injury here, death, is indivisible. See Prosser, Law of Torts 315 (4th ed. 1971).

■■ We briefly address Roper's contention that the contribution act's provision for retroactive application is unconstitutional. To preserve for review a constitutional objection to a statute the objection must be specific and complete. (*Van Driel Drug Store, Inc. v. Mahin* (1970), 47 Ill. 2d 378, 265 N.E.2d 659; *Biggs v. Cummins* (1955), 5 Ill. 2d 512, 126 N.E.2d 208.) In the trial court, Roper, in a footnote contained in its reply to the motion to dismiss, generally stated that the act was unconstitutional. It failed to point out specifically any constitutional defects, and failed to present any further argument on the issue. Accordingly, this issue has been waived.

For the reasons stated, the judgment of the circuit court of Cook County dismissing the third-party complaint is affirmed.

Judgment affirmed.

RIZZI, P. J., and WHITE, J., concur.